# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| TERRI Y. O'BRYAN, | ) | 3:04-CV-00482-RAM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| STATE OF NEVADA, ex. rel., ITS DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES, DIVISION OF ENVIRONMENTAL PROTECTION, | ) | |
| Defendant. | ) | |

Before the court is Defendant's Motion for Summary Judgment (Doc. #14). Plaintiff opposed the motion (Doc. #22), and Defendant replied (Doc. #23). For the reasons set forth below, Defendant's Motion for Summary Judgment (Doc. #14) is denied.

## BACKGROUND

Plaintiff Terri O'Bryan was an employee of the Nevada Division of Environmental Protection (NDEP), a division of the Department of Conservation and Natural Resources (DCNR). (Doc. # 14). She was a full-time NDEP employee beginning in November of 1990. (Doc. #14, Exh. D). Plaintiff began her tenure at the NDEP as a clerical employee who worked in the "front office" of NDEP, where her duties included providing clerical support for the needs of the front office and for the Office of Fiscal and Personnel Management (OFPM), a department within NDEP . (Doc. #14, Exh. H). The position for which she was hired was "management assistant". (Doc. #14, Exh. D and F). In 2000 OFPM moved to another building and Plaintiff accepted a clerical position at the new location, (Id.), where she was the only clerical employee. (Doc. #14, Exh. I; Exh. B at 37). Plaintiff's deposition testimony suggests that she found the filing requirements of the new position very onerous, which,

according to the deposition testimony, were shared by Plaintiff and another employee prior to OFPM's move to the new building. (Doc. # 14, Exh. B at 40-41).

In February of 2002, while at the new location, Plaintiff filed a worker's compensation claim complaining of injuries to her neck and back that were, in her opinion, caused by the repetitious movement required by her filing duties. (Doc. #14, Exh. K). Plaintiff had previous injuries from a serious car accident in 1973. (Doc. # 14, Exh. A). Plaintiff alleges that her previous injuries combined with the 2002 injury to render her disabled in that she was "substantially limited [in] her daily life activities, including lifting, sitting, standing, walking." (Docs. #2 and #22). Plaintiff's physician recommended that she engage in filing no more than 20 percent of the time, and that she change tasks every 20 minutes. (Doc. #14, Exh. L; Doc. #22)

Defendant's exhibits suggest that there is significant evidence demonstrating NDEP's repeated efforts to accommodate Plaintiff's many complaints, both before and after her 2002 injury.[1] (See, e.g., Doc. #14, Exh. J). However, since Plaintiff does not allege she was disabled under the Americans with Disabilities Act (ADA) until February of 2002, only subsequent accommodations are relevant to the inquiry at hand.

Defendant asserts that it accommodated Plaintiff's 2002 injury by encouraging her to sit down between tasks that required her to be on her feet and by providing her with an ergonomically proper workstation. (Doc. #14, Exhs. S and V). Plaintiff also requested that OFPM acquire new file cabinets. (Doc. #14, Exh. S; Doc. #22). The cabinets were inspected to see if they were damaged enough to trigger a warranty; they were not. (Doc. #14, Exh. S). Marcia Manley, the safety coordinator, apparently recommended against new file cabinets, at least in part because she had "concerns that this

---

[1] Defendant's exhibits provide evidence of various accommodations. In November of 1998 she complained of tendonitis in her left thumb. As a result, her duties were modified so that some of her tasks were divided among other staff. (Doc. #14, Exh. J). In January of 1998 an ergonomic review of Plaintiff's workstation was performed and all of the changes were implemented, except for the phone headset, which Plaintiff refused to use. (Doc. #14, Exh. B at 77-78 and Exh. F). In 2000 an ergonomic review of Plaintiff's workstation was performed and the changes were implemented. *Id.* In January of 2001 NDEP followed Plaintiff's physician's recommendation that she change positions every 20 minutes and not make repetitious movements using her neck. *Id.* In February of 2001 Plaintiff's doctor recommended that Plaintiff receive an ergonomically correct desk and Plaintiff received one. *Id.*

employee will continue to have work-related injuries as long as there is any type of repetitive motion involved." (Doc. #22; Doc. # 23-1, Exh. II).

Defendant maintains that it accommodated Plaintiff's restrictions by trying to locate a permanent light duty position for her in another department of the DCNR. (Doc. #14, Exh. M at 10). The only position that became available required significant filing duties. (Doc. #23-1, Exh. JJ). When no other position could be located, and Plaintiff continued to complain of significant pain, (Doc. #14, Exh. S), NDEP arranged for her to be temporarily assigned to light duty in two different State departments: Bureau of Mining Regulation and Reclamation and the Fire Marshal's Office. (Doc. #14, Exhs. H, N, and O). Once Plaintiff's work restrictions became permanent she was apparently no longer eligible for temporary placements. (Doc. #14, Exh. X at 8). Allen Biaggi, the administrator of the NDEP, then wrote a letter to risk management indicating that the NDEP could not accommodate Plaintiff in her clerical position at OFPM, that the NDEP had no available positions that could accommodate Plaintiff's restrictions, and requesting that Plaintiff be transferred to a State position outside of NDEP or provided with rehabilitation services. (Doc. #14, Exh. Y). It is not clear what steps were taken to explore what positions were available with other State departments. Plaintiff received notice of her termination on November 29, 2002. (Doc. #22). There is some question as to whether Defendant forwarded the appropriate information to enable Plaintiff to be placed on re-hire lists for her division. (Id.).[2]

Plaintiff brought this action against the State for claims under the ADA and the Rehabilitation Act (RA), alleging that she is disabled under the Acts and that NDEP failed to accommodate her disability in accordance with the requirements of the Acts.

///

///

---

[2] Plaintiff was provided with six months of vocational rehabilitation services through Wilcher, Van Dyk & Associates, ending April 3, 2003. (Doc. #14, Exh. Q). The services consisted of job placement assistance only because it was determined that Plaintiff had marketable skills. (Doc. #14, Exh. R). The job placement assistance did not result in a placement. (Id.). At the time of her deposition Plaintiff reported that she had been recently employed by various temporary work agencies, through which she had been placed in a series of clerical positions. (Doc. #14, Exh. B at 32-35).

3

Defendant moved for summary judgment, arguing that there is no genuine issue of material fact as to (1) whether Defendant accommodated Plaintiff, and (2) whether making further accommodations for Plaintiff would have been an undue hardship on Defendant.

## DISCUSSION

### I.   Standard for Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact" thereby entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material only where it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party, the motion is properly granted. Fed. R. Civ. P. 50(a). In considering the motion, the Court views the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Zazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

The moving party has the burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to survive summary judgment the non-moving party must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. If the nonmoving party's evidence is merely colorable or is not significantly probative, then summary judgment may be granted. *Id.* at 249-50.

Here, Plaintiff argues that the following issues of material fact entitle her to a jury trial: (1) whether the Defendant participated in the interactive process in good faith; and (2) whether accommodating Plaintiff's 20% filing limitation constituted an undue hardship on the State.[3] (Doc. #22).

///

---

[3] Plaintiff also argues that there is an issue regarding whether she ever agreed that her new position at OFPM required her to file 80% of the time. (Doc. #22). It is not clear to the court what difference it makes whether or not Plaintiff agreed to her job requirements, as the Plaintiff has not presented any evidence indicating that the requirements were made more demanding after Plaintiff's 2002 injury nor any evidence that the 80% figure (70% in the job analysis paperwork (Doc. #23-1, Exh. KK)) was arrived at as the result of any animus towards the Plaintiff. Defendant is not required to alter the job requirements to suit Plaintiff, only to make accommodations to enable Plaintiff to perform the essential functions of the job.

4

**A.     Americans with Disabilities Act**

The ADA prohibits discrimination against any qualified individual with a disability. 42 U.S.C. § 12112(a) (2006). A "qualified individual" includes "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of" the job. *Id. at* § 12111(8). The relevant regulations define a disability as a "physical or mental impairment that substantially limits one or more of the major life activities ..." 29 C.F.R. § 1630.2(g) (2006). "Major life activity" includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I) (2006).

The Defendant's motion does not dispute that Plaintiff is a qualified individual or that she is disabled, but instead assumes for purposes of the motion that the ADA applies to Plaintiff. (Doc. #14).[4] Thus, since the issue is not before the court, this order does not consider whether or not Plaintiff meets those requirements. Of course, at trial Plaintiff will still have to prove each element.

**i.     Reasonable Accommodation**

Under the framework of the ADA an employer must reasonably accommodate the employee's disability. 29 C.F.R. § 1630.9 (2006). The employee has the burden of showing the existence of a reasonable accommodation that would enable her to perform the essential functions of the job. *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir., 2006). To avoid summary judgment the employee "need only show that an 'accommodation' seems reasonable on its face, i.e. ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-402 (2002). Further, the Ninth Circuit has made clear that the employer must affirmatively engage in the "interactive process in order to identify, if possible, a reasonable accommodation that would permit [the employee] to retain [her] employment." *Dark, 451 F.3d at 1088; see also Morton v. United Parcel Service*, 272 F.3d 1249 (9th Cir. 2002), (making

---

[4] The Defendant's Reply in Support of Motion for Summary Judgment disputes that Plaintiff was 20% disabled under Nevada law. (Doc. #23-1). This is not a material issue; it only matters whether Plaintiff was disabled under the meaning of the ADA, not under the Nevada Revised Statutes (NRS). Thus, because the definitions and procedures under the NRS are not relevant and because both parties' papers address only reasonable accommodation and undue hardship, the Court treats the matter of Plaintiff's being disabled in a major life activity as not in dispute, for purposes of this motion only.

clear that summary judgment is available only where there is no genuine dispute that the employer has engaged in the interactive process in good faith).

An employer is not required to exempt an employee from performing essential job functions or to reallocate essential functions to other employees. *Dark*, 451 F.3d at 1089. However, the employer's duty to accommodate is "not exhausted by one effort." *Humphrey v. Memorial Hosps. Ass'n.*, 239 F. 3d 1128, 1138 (9th Cir. 2001). The ADA specifically contemplates "reassignment to a vacant position" as a possible accommodation. 42 U.S.C. § 12111(9)(b). The Ninth Circuit has adopted the Tenth Circuit's rule that, in regards to accommodating an employer through transfer to another position within the company, an employer must consider both contemporaneously available positions and those that will become available within a reasonable time. *Dark*, 451 F.3d at 1089-90.

Further, the Ninth Circuit maintains a "high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach.*, 80 F.3d 1406, 1410 (9th Cir. 1996). The Ninth Circuit has explained that it "require[s] very little evidence to survive summary judgment' in a discrimination case, 'because the ultimate question is one that can only be resolved through a "searching inquiry" - one that is most appropriately conducted by the factfinder, upon a full record.'" *Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1563 (9th Cir. 1994).

Plaintiff proposes several possible ways the State could have accommodated her disability more fully: (1) purchase new filing cabinets; (2) hire another clerical employee to help with the filing duties in the OFPM division of NDEP; (3) provide vocational rehabilitation; or (4) find a light duty position for her within some other State department. (Doc. # 22).

As for Plaintiff's first suggestion, the evidence shows that Plaintiff's position required her to file 70% or 80% of the time. Even if the State had purchased new file cabinets, the Plaintiff would still not be able to meet the demands of her position, given that her doctor limited her to filing 20% of the time. Thus, new filing cabinets would not have been a reasonable accommodation enabling Plaintiff to fulfill the requirements of her job and Defendant's liability cannot be based on any failure by Defendant to satisfy Plaintiff's request for new cabinets.

/ / /

Plaintiff's second proposed accommodation (and it is not clear whether this request was articulated during Plaintiff's employment or only after litigation had commenced) also fails to state a basis for liability. It is not reasonable "in the run of cases" to require an employer to hire and compensate two employees to perform duties previously performed by one employee. Hiring another employee would not have enabled Plaintiff to fulfill the essential functions of her job, it would have totally altered them. What Plaintiff puts forth as a possible accommodation would require the employer to go above and beyond what is required by the ADA, as interpreted by the Ninth Circuit. The Ninth Circuit made clear in *Dark* that an employer need not exempt an employee from performing essential job functions or reallocate essential functions to other employees. *Dark*, 451 F.3d at 1089.

Plaintiff's next proposed accommodation (again, it is not clear whether this request was articulated during Plaintiff's employment or only after litigation commenced) concerns vocational rehabilitation. The evidence presented to the court shows that Plaintiff was provided with job search assistance through Wilcher, Van Dyk & Associates, which Defendant considers vocational rehabilitation, but this assistance was not provided until after Plaintiff's termination. A post-termination "accommodation" does not satisfy Defendant's obligation to reasonably accommodate a disabled employee. Once an employee has been terminated, the employer can no longer be said to be engaged in the interactive process. Thus, a genuine issue of material fact remains concerning whether vocational rehabilitation would have been a reasonable accommodation enabling Plaintiff to perform the essential functions of her job.

There also remains a genuine issue of material fact as to whether Defendant engaged in the interactive process with regard to Plaintiff's requested accommodation of placement in another position. Although the evidence before the court shows that Allen Biaggi made at least some effort to find an open position for Plaintiff, and that one position with more demanding filing requirements was located, it is not clear whether Defendant genuinely engaged in the interactive process or, as Plaintiff characterizes the facts, "funneled Plaintiff out the door." (Doc. #22). Under the ADA, as stated above, an employer must consider both contemporaneously available positions and those that will become available within a reasonable time. Dark, 451 F.3d at 1089-90. The evidence before the court is not conclusive on

whether the Defendant engaged in the interactive process in considering whether Plaintiff could be accommodated through placement in another State position, especially regarding when and whether Plaintiff was placed on re-hire lists. If Defendant, prior to Plaintiff's termination, in fact failed to place Plaintiff on re-hire lists, a reasonable jury could find that Defendant failed to engage in the interactive process with regard to accommodating Plaintiff by placement in a vacant position. Viewing the facts in the light most favorable to the Plaintiff, and given the Ninth Circuit's "high standard for the granting of summary judgment in employment discrimination cases", summary judgment on the issue of reasonable accommodation is **DENIED**.

### ii. Undue Hardship

Even where an accommodation is available and found to be reasonable, the ADA does not require the employer to accommodate the employee where it would inflict an undue hardship on the employer. *Summers v. A. Teichert & Sons, Inc.*, 127 F.3d 1150, 1153 (9th Cir. 1997). The burden is on the employer to demonstrate that an undue hardship would result. *Id.* Further, the Ninth Circuit has also made clear that the undue hardship analysis is a "fact-intensive inquiry, rarely suitable for resolution on summary judgment." *Morton* at 1256-1257.

The Defendant has not presented sufficient evidence to warrant a finding of undue hardship. The only evidence of undue hardship the Defendant has presented consists of deposition testimony from Tina Leahy stating that OFPM experienced "a hardship" while Plaintiff was temporarily assigned to other departments and the deposition testimony of Lauri Dunn, a budget analyst from OFPM, stating that the filing backed up while Plaintiff was out of the office. (Doc. #14). These facts do not address whether it would have been an undue hardship for Defendant to accommodate Plaintiff by placing her in another position. Because the burden is on the employer to demonstrate that an undue hardship would result and because the inquiry is "rarely suitable for resolution on summary judgment," the Defendant's request for summary judgment on grounds of undue hardship is **DENIED**.

///
///
///

B.  **Rehabilitation Act**

Section 504 of the Rehabilitation Act applies the ADA framework outlined above to recipients of Federal financial assistance. *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002) . Both Acts require employers to make reasonable accommodation for qualified individuals unless doing so would impose an undue hardship. *Wong v. Regents of the Univ. of California*, 410 F.3d 1052, 1055 (9th Cir. 2005).

Defendant's motion does not directly make any arguments regarding the appropriateness of summary judgment on Plaintiff's Rehabilitation Act claim.[5]  However, Defendant's motion requests summary judgment based on the lack of any genuine issue of material fact regarding whether Defendant accommodated the Plaintiff or as to whether it would have been an undue hardship for Defendant to make further accommodations for Plaintiff. Because the analysis of both of these issues would be the same under either Act, the Defendant's request for summary judgment of Plaintiff's Rehabilitation Act claims is **DENIED**.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. #14) is **DENIED**.

DATED: September 21, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

---

[5] In fact, Defendant seems to be confused as to what part of the Rehabilitation Act might apply to Plaintiff, providing a citation to 29 U.S.C. § 705, rather than to 29 U.S.C. § 794, where Section 504 of the Rehabilitation Act appears in the code.